**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-11480
Summary Calendar
_____


SANFORD L. MARSHALL,

Plaintiff-Appellant,

VERSUS

AT&T INCORPORATED,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Texas
(3:94-CV-858-H)
_____


June 5, 1997

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Sanford L. Marshall appeals a summary judgment on his common law battery and retaliatory discharge claims against AT&T, Inc. ("AT&T").  Finding no error, we affirm.


I.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Marshall was employed by AT&T's Calibration Laboratory as a technician from 1977 until his discharge in March 1993. Beginning in early fall 1992 and continuing until his discharge, Marshall smelled an odor emanating from the laboratory, which odor he characterized as "the smell of a dead dog." Although Marshall remained the sole laboratory member who could detect the smell, AT&T conducted an analysis of the air-filtration system to no avail. After Marshall continued to complain, AT&T hired an independent firm to conduct an air-quality assessment in the laboratory; again, the assessment revealed that the air quality was "within accepted government and regulatory guidelines."

In November 1992, Marshall discerned that the source of the odor was the perfume worn by a co-worker, Retha Hansen. After Hansen refused to refrain from wearing the perfume, Marshall began making comments in her presence about the perfume's foul smell, including making faces when he walked past her, saying "phew" and waving his hand in front of his face as he walked by, making jokes about her perfume, and wearing a full-face respirator mask when Hansen would enter the lab.

Marshall was reprimanded by his supervisors both because his actions were upsetting to Hansen and because they were affecting negatively his ability to interact with others in the laboratory and thus perform his job. Various co-workers also reported to their supervisors that his behavior with respect to Hansen was

disrupting the work being performed in the laboratory.

On February 25, 1993, Marshall filed a workers' compensation claim seeking remuneration for the adverse health consequences attendant to his breathing the "dead dog" perfume. On March 11, 1993, Marshall was suspended pending further investigation of his "disruption of the workforce and continued harassment of [Hansen]." One month later, Marshall was informed that, effective March 11, he was discharged for his disruption of the workforce and harassment of Hansen, as well as for his history of other incidences of harassment and disruptions. Marshall filed in November 1993 a claim with the EEOC, alleging that AT&T's failure to accommodate his smell disability and its tacit acceptance of other co-workers' harassment of Marshall constituted discrimination under the Americans with Disabilities Act ("ADA").

After receiving a right-to-sue letter from the EEOC, Marshall filed the instant action alleging various state law torts and two counts of impermissible retaliatory discharge. The district court granted summary judgment on all claims.

## II.

We review a grant of summary judgment *de novo*. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

## A.

Marshall alleges first that the district court erred in granting summary judgment on his state law battery claim. According to Marshall, the chemicals contained in the perfume to which he has an apparent sensitivity "offensively touched" his person, thereby stating a claim for battery.

In Texas, a battery is "'the least touching of another person willfully and in anger, by use of any part of the body of the party committing the offense.'"  *Price v. Short*, 931 S.W.2d 677, 687 (Tex. App.SSDallas 1996, no writ).  Battery requires an offensive touching only, not an intent to injure.  *See id.* (citing *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629-30 (Tex. 1967)).

Marshall has not brought to our attention, nor are we aware of, any controlling cases that support his theory that the "offensive touching" of his person by chemical particles emanating from the perfume of another supports a claim for battery.[1]  Were we

---

[1] AT&T points us to *Leichtman v. WLW Jacor Communications, Inc.*, 634 N.E.2d 697, 699 (Ohio Ct. App. 1994), as an example of a case that has recognized tobacco smoke as "particulate matter" that has the physical properties capable of making contact and thus giving rise to a battery.  We reserve comment on the similarities or differences between tobacco smoke and perfume odors, save to note that the *Leichtman* court's treatment of tobacco smoke as "particulate matter" is statutory in origin.  *See id.*

to adopt Marshall's suggestion, we would be creating a new cause of action akin to a person-based nuisance theorySSi.e., that the perfume vapors interfered unreasonably with Marshall's possessory interests in his own person. *See, e.g.*, *Watson v. Brazos Elec. Power Coop.*, 918 S.W.2d 639, 644-45 (Tex. App.SSWaco 1996, writ denied) (defining the tort of traditional land-based nuisance under Texas law). We decline to do so.

B.

Marshall next contends that the district court erred in failing to conclude that he was terminated in violation of § 451.001 of the TEX. LABOR CODE (formerly TEX. REV. CIV. STAT. ANN. art. 8307c (Vernon Supp. 1992)). According to Marshall, he was fired in retaliation for filing a workers' compensation claim.

Section 451.001, a statutory exception to Texas's employment-at-will doctrine, prohibits an employer from discriminating against or discharging an employee because he has filed a claim, hired a lawyer to represent him in a claim, instituted or caused to be instituted in good faith any proceeding under the Texas Workers' Compensation Act, or testified or is about to testify in any such proceeding. *See Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 589 (5th Cir. 1995). An employee claiming retaliatory discharge has the burden of demonstrating that his protected conduct was such that, without it, the employer's prohibited

5

conduct would not have occurred when it did. *See Continental Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). Thus, an employer does not discriminate against an employee for filing a workers' compensation claim unless the employer's action would not have occurred when it did had the claim not been filed. *See id.*

The employee bears the initial burden of demonstrating the causal link between the protected activity and his discharge. *See Swearingen v. Owens-Corning Fiberglass Corp.*, 968 F.2d 559, 562 (5th Cir. 1992). Circumstantial evidence sufficient to establish a causal link includes (1) knowledge on the part of those making the termination decision of the claim's having been filed; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to others similarly situated; and (5) evidence that the proffered reason for the discharge was false. *See Continental*, 937 S.W.2d at 451. Once the employee establishes this causal link, the employer must rebut the showing of alleged discrimination by proffering a legitimate, non-discriminatory reason for the discharge. *See Swearingen*, 968 F.2d at 562. Where an employer proffers a legitimate, non-discriminatory reason, and the employee fails to produce any additional evidence of retaliatory motive, summary judgment is appropriate. *See Texas Division-Tranter, Inc., v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994).

Marshall's summary judgment evidence supporting his contention that his filing a workers' compensation claim was a determining factor in his discharge is weak at best. First, he asserts that the temporal nature of his dischargeSSfifteen days after the filing of his claimSSevinces retaliation. That a discharge post-dates the filing of a claim by a certain number of days is not sufficient on its own to demonstrate a retaliatory motive. *See, e.g.*, *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 82 (Tex. App.SSEl Paso 1992, no writ) (reviewing the temporal nature of the discharge in the light of other direct evidence supporting the employee's retaliatory discharge claim); *Chemical Express Carriers, Inc., v. Pina*, 819 S.W.2d 585, 590 (Tex. App.SSEl Paso 1991, writ denied) (same). Second, even assuming *arguendo* that Marshall has demonstrated adequately that the AT&T decisionmakers had knowledge of his having filed a claim at the time they made the discharge decision (which evidence AT&T attacks as conclusionary), this factor alone does not establish an employee's *prima facie* case of discrimination. *See Hogue v. Blue Bell Creameries, L.P.*, 922 S.W.2d 566, 571 n.5 (Tex. App.SSTexarkana 1996, writ denied).

Finally, Marshall contends that his supervisors' negative attitude toward his apparent sensitivity to Hansen's perfume evince the requisite connection between his filing a claim and his discharge. The allegedly incriminating evidence to which Marshall points includes (1) that he was told by his supervisors not to wear

**7**

during work an "unsightly" charcoal respirator to filter out the perfume, but rather to wear a less obtrusive white surgical mask that AT&T had provided free of charge; (2) that he was instructed to refrain from complaining to and harassing Hansen regarding her perfume; (3) that he was "harassed" by other non-supervisory co-workers who told him that he was upsetting Hansen and that doing so was unproductive; and (4) that AT&T failed to take additional actions to accommodate him, including conducting a third air study in the laboratory, instructing Hansen not to wear her perfume, and transferring him to another shift (after having already done so once at his request).[2]

This evidence demonstrates AT&T's negative attitude not toward Marshall's injured *condition*, but rather toward the *effects* of his condition on his and others' abilities to perform their jobs satisfactorily. Marshall was terminated because he had a history of poor work performance (noted in his evaluations as early as 1984), because he continued to harass Hansen after having been counseled to stop, and because he was affecting worker morale in the laboratory. In fact, at a meeting of technicians held on March 5 (just six days before Marshall's suspension and termination), which meeting he refused to attend because of the

---

[2] Marshall makes much of a March 11, 1993, memo in which Betsy Harrod, a public relations manager, recommends his termination. We disagree with Marshall that the memo evinces AT&T's "negative attitude" toward his sensory condition. To the contrary, it demonstrates that it is the consequences of his conditionSSi.e., his continued harassment of Hansen and his ill-effect on the rest of the group's work productSSthat made his termination necessary.

smell, his co-workers reiterated to their supervisor that his harassment of Hansen and complaints about the smell were disrupting the work being done in the laboratory and that "they were tired of having to work with [Marshall] causing so much confusion/trouble."

Whether Marshall disbelieves AT&T's proffered reason for his discharge, AT&T has put forth a legitimate, non-discriminatory reason that not only is not contradicted by Marshall's "negative attitude" evidence but is in fact consistent with it. Marshall's "subjective beliefs [to the contrary] are no more than conclusions and do not raise a fact issue precluding summary judgment in a retaliatory discharge action under the Workers' Compensation Law." *See Continental*, 937 S.W.2d at 452 (citation omitted).

C.

Marshall complains that the district court erred in granting summary judgment on his claim of retaliatory discharge under the ADA. The factual basis supporting Marshall's ADA claim is identical to that underlying his § 451.001 claim above.

To establish a *prima facie* case of impermissible retaliation, a plaintiff must prove (1) that he is engaged in an activity protected under title VII; (2) that an adverse employment action occurred; and (3) that there is a causal connection between his participation in the protected activity and the adverse employment decision. *See Equal Employment Opportunity Comm'n v. J.M. Huber*

*Corp.*, 927 F.2d 1322, 1326 (5th Cir. 1991). Once the *prima facie* case is established, the burden shifts to the employer to produce some legitimate, non-discriminatory reason for the adverse employment action. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995). If the employer is so successful, the burden shifts to the plaintiff to prove that the employer's reasons are pretextual and that "but for" his participation in the protected activities, he would not have been subject to the adverse action. *See id.*

Because Marshall relies upon the same evidence of retaliation in support of this claim as he does for the § 451.001 claim above, we need not repeat our analysis.[3] Even assuming *arguendo* that Marshall has satisfied his burden of presenting a *prima facie* case of retaliatory discharge, AT&T has carried its burden of proffering a legitimate, non-discriminatory reason for his discharge. Marshall has failed to put forth any additional evidence to satisfy his burden of proving that AT&T's proffered reasons are pretextual and that, "but for" his filing of a claim with the EEOC, his employ

---

[3] In fact, because Marshall must demonstrate, under title VII, that "but for" his engaging in a protected activity he would not have been terminated, *see Ray*, 63 F.3d at 435, whereas under § 451.001 he need only demonstrate that his filing a workers' compensation claim was a "determining factor" only, *see Swearingen*, 968 F.2d at 562, Marshall's inability to prove his § 451.001 claim based upon identical facts forecloses any possibility of recovery under title VII.

with AT&T would not have been terminated.[4]

AFFIRMED.

---

[4] To the extent that Marshall relies upon the temporal nature of his termination and his supervisors' awareness of his smell disability to evince a causal connection between his termination and his engaging in a protected activity, we note that such evidence is sufficient to carry his burden to produce a *prima facie* case only. *See Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1141 n.13 (5th Cir. Unit A Sept. 1981). Once AT&T proffers its legitimate, non-discriminatory reason for his discharge, he must then present additional evidence to demonstrate pretext.